IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CR 83 HEA/NCC |
| | ) |
| MICHAEL MCDONALD | ) |
| | ) |
|     Defendant. | ) |

**MOTION TO DISMISS DUE TO UNCONSTITUTIONAL VAGUENESS**

COMES NOW defendant MICHAEL MCDONALD, a citizen of the United States, through his attorney, Robert C. Wolfrum, Assistant Federal Public Defender, to move this court for an Order dismissing the charge for the reason that the term "lascivious" is unconstitutionally vague.

**INTRODUCTION**

Mr. McDonald has been charged under 18 U.S.C. § 2252A(a)(1), which criminalizes the transportation of child pornography in interstate and foreign commerce. Federal law defines child pornography as "any visual depiction…of sexually explicit conduct" involving a minor, and "sexually explicit conduct", in turn, as including, *inter alia*, the "lascivious exhibition of the genitals or pubic area[.]" 18 U.S.C. §§ 2256(8), 2256(1), 2256(2)(A)(v). However, the term "lascivious" itself is left undefined by the United States Code.

**ARGUMENT**

The term "lascivious" is unconstitutionally vague in light of recent Supreme Court precedent. It is unconstitutionally vague by the explicit wording of *United States v. Williams*, 553 U.S. 285 (2008), and by the reasoning of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

1

**I.      The term "lascivious" is unconstitutionally vague under *Williams*.**

In *Williams*, the Supreme Court explained that "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather *the indeterminacy of precisely what that fact is*." 553 U.S. at 306 (emphasis added). Circuits have struggled in attempting to craft a definition of "lascivious" due to the indeterminacy of precisely what the incriminating fact is—what makes an image lascivious.  "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."   553 U.S. at 304.

In *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239, 832 (9th Cir. 1987), the district court articulated six factors to be looked at when determining whether an image is lascivious:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The Eighth Circuit adopted the *Dost* factors in *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999). While at first blush the *Dost* factors may look straight-forward and as though they do not engender

indeterminacy regarding precisely what the incriminating fact is, the opposite is in fact the case. As one commentator observed, "the *Dost* test has produced a profoundly incoherent body of case law. A. Adler, *Inverting the First Amendment*, 149 U. PA. L.REV. 921, 953 (2001).

In *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999), the First Circuit emphasized that the *Dost* factors "are neither comprehensive nor necessarily applicable in every situation. Although *Dost* provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains lascivious exhibition. The inquiry will always be case-specific." In other words, the *Dost* factors may contain the incriminating fact (that which makes an image lascivious), but there may be other cases in which the *Dost* factors do not contain the incriminating fact, yet the image is still lascivious. Because the *Dost* factors may or may not contain the incriminating fact, there is indeterminacy as to precisely what the incriminating fact is. The incriminating fact making an image lascivious could be any *Dost* factor one through six—or, as the First Circuit admits in *Amirault*, something else entirely.

Even if it were put aside that the *Dost* factors engender an indeterminacy of precisely what the incriminating fact is (by means of their neither being comprehensive nor necessarily applicable in all cases), there is still further indeterminacy within the *Dost* factors themselves. First, there is indeterminacy as to whether the incriminating fact that makes an image lascivious is the presence of one *Dost* factor, or more than one. "*Compare*, *e.g. United States v. Wolf*, 890 F.2d 241, 245 & n. 6 (10th Cir. 1989) ("We do not hold that more than one *Dost* factor must be present…"), *with United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("Although more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present.")." *United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006). This constitutes indeterminacy of precisely what the incriminating fact is because for the *Wolf* court, for example, an image of a child in an unnatural pose could be the incriminating fact

3

(*Dost* factor 3), whereas for the *Villard* court an image of a child in an unnatural pose—unless accompanied by another *Dost* factor—could not be the incriminating fact.

Second, there is indeterminacy about whether the incriminating fact is a fact about the image itself, or whether the incriminating fact is a fact about the intent of the creator or possessor of the image. *Compare Villard,* 885 F.2d at 125 ("We must…look at the photograph, rather than the viewer," because if "we were to conclude that the photographs were lascivious merely because [defendant] found them sexually arousing, we would be engaging in conclusory bootstrapping."), *with Wolf*, 890 F.2d at 247 ("[L]asciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or likeminded individuals.").

There is indeterminacy about precisely what the incriminating fact is in regards to the term "lascivious" in three manners: i) the *Dost* factors are neither comprehensive nor applicable in all situations, meaning they may or may not contain the incriminating fact, ii) it is unclear whether the incriminating fact can be composed of the presence of one *Dost* factor, or whether the incriminating fact requires the presence of at least two *Dost* factors, and iii) it is unclear whether the incriminating fact is a fact about the image itself, a fact about the intent of the creator or possessor of the image, or both (if only one *Dost* factor is required, then it cannot be both, as only *Dost* factor 6 discusses intent, factors 1 through 5 are facts about the image itself).

One might object, however, that what is present here is not indeterminacy of precisely what the incriminating fact is, but merely difficulty in determining whether the incriminating fact has been proved. In this line of argument, the lasciviousness of the image itself would be the incriminating fact, and all the indeterminacy of the *Dost* factors is merely indeterminacy regarding whether the incriminating fact (lasciviousness) has been proved, but not the type of indeterminacy that would make a statute unconstitutionally vague under *Williams* (indeterminacy of precisely what the incriminating fact

is). This argument that lasciviousness itself is the incriminating fact and that therefore any underlying *Dost* factor indeterminacy is merely difficulty in proving the incriminating fact would contradict well-established Eighth Circuit precedent: While "the question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact…the meaning of 'lascivious exhibition of the genitals' is an issue of law." *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001). The import of the meaning of lasciviousness being an issue of law is that lasciviousness itself is not a fact—"the meaning" of lasciviousness refers to the underlying incriminating facts that make something lascivious. Indeterminacy in the meaning of lasciviousness—in precisely what the incriminating fact or facts are—makes the term "lascivious" unconstitutionally vague under *Williams*.

### II. The term "lascivious" is unconstitutional under *Johnson*.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court invalidated the residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague. The term "lascivious" is unconstitutionally vague for the same reasons that the Supreme Court found ACCA's residual clause to be unconstitutionally vague.

The clause at issue in *Johnson* defines what constitutes a "violent felony", and reads:

any crime punishable by imprisonment for a term exceeding one year…that—
(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(ii)  is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion is the now invalidated residual clause.

The Supreme Court explains, "Two features of the residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime[,]" and "[a]t the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Johnson*, 135 S. Ct. at 2557,

5

2558. The two features that make the residual clause unconstitutionally vague are uncertainty about the inquiry to be made to determine risk, and uncertainty about how much risk must be found.

The term "lascivious" is plagued by precisely the same defects that make ACCA's residual clause unconstitutionally vague. First, there is uncertainty as to the inquiry to be made. *Compare Villard,* 885 F.2d at 125 ("We must…look at the photograph, rather than the viewer[.]"), *with Wolf*, 890 F.2d at 247 ("[L]asciviousness is not a characteristic of the child photographed but of the exhibition that the photographer sets up for an audience that consists of himself or likeminded individuals."). Even for those courts that do look at the sixth *Dost* factor (whether the visual depiction is intended or designed to elicit a sexual response in the viewer) there remains significant uncertainty as to the inquiry to be made. *See, e.g. Amirault*, 173 F.3d at 34 ("This is the most confusing and contentious of the *Dost* factors. Is this a subjective or objective standard, and should we be evaluating the response of an average viewer or the specific defendant in this case? Moreover, is the intent to elicit a sexual response analyzed from the perspective of the photograph's composition, or from extrinsic evidence (such as where the photograph was obtained, who the photographer was, etc.)?"). Such disagreement about the nature of the inquiry to be made is a strong signal of unconstitutional vagueness, as the Supreme Court observes in *Johnson*: "The most telling feature of the lower courts' decisions is not division about whether the residual clause covers this or that crime (even clear laws produce close cases); it is, rather, pervasive disagreement about the nature of the inquiry one is supposed to conduct and the kinds of factors one is supposed to consider." 135 S. Ct. at 2560.

Second, just as with ACCA's residual clause, there is uncertainty as to how much must be found by the inquiry into lasciviousness. "*Compare*, *e.g. United States v. Wolf*, 890 F.2d 241, 245 & n. 6 (10th Cir. 1989) ("We do not hold that more than one *Dost* factor must be present…"), *with United States v.*

*Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("Although more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present.")." *Frabizio*, 459 F.3d at 88.

Finally, the Supreme Court in *Johnson*, referring to the residual clause, explains:

It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements. How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves? A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct? To take an example, does the ordinary instance of witness tampering involve offering a witness a bribe? Or threatening a witness with violence? Critically picturing the criminal's behavior is not enough; as we have already discussed, assessing 'potential risk' seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out....Explaining why attempted burglary poses a serious potential risk of physical injury, the Court said: 'An armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program. Or a homeowner…may give chase, and a violent encounter may ensue.' The dissent, by contrast, asserted that any confrontation that occurs during an attempted burglary 'is likely to consist of nothing more than the occupant's yelling 'Who's there?' from his window and the burglar's running away.' The residual clause offers no reliable way to choose between these competing accounts of what 'ordinary' attempted burglary involves.

135 S. Ct. at 2257-58 (internal citations omitted). At least three of the six *Dost* factors similarly tie the judicial assessment to a judicially imagined abstraction or 'ordinary case'. Factors 2 (whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity), 3 (whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child), and 5 (whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity), all require a judicially imagined 'ordinary case', with neither the statute nor the *Dost* factors offering a reliable way to choose between competing accounts of what would be a place or pose generally associated with sexual activity (factor 2), what is an unnatural pose or inappropriate attire (factor 3), or what sorts of characteristics in an image suggest sexual coyness or a willingness to engage in sexual activity (factor 5). While there may be some things that uncontroversially fall within the purview of any of these factors, as there was conduct that uncontroversially fell within the ambit of ACCA's residual clause, the Supreme Court emphasizes, "[O]ur *holdings* squarely contradict the theory

7

that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 135 S. Ct. at 2561.

The term "lascivious" is unconstitutionally vague under *Johnson* because of the uncertainty as to the nature of the inquiry to be undertaken, the uncertainty as to the quantum that must be found by the inquiry, and the *Dost* factors' reliance on judge-imagined 'ordinary cases' with no reliable way to choose between competing accounts of what the ordinary case is (i.e. a places or poses generally associated with sexual activity, an unnatural poses or inappropriate attire, and characteristics suggestive of sexual coyness or willingness to engage in sexual activity).

## CONCLUSION

For the reasons stated above, Mr. McDonald moves this court for an Order dismissing the charge for the reason that the term "lascivious" is unconstitutionally vague.

Respectfully submitted,

/s/Robert C. Wolfrum
ROBERT C. WOLFRUM
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Robert_Wolfrum@fd.org

ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Rob Livergood, Assistant United States Attorney.

...

    /s/Robert C. Wolfrum
ROBERT C. WOLFRUM
Assistant Federal Public Defender