IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CR 83 HEA/NCC |
| | ) |
| MICHAEL MCDONALD | ) |
| | ) |
|     Defendant. | ) |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

COMES NOW defendant MICHAEL MCDONALD, a citizen of the United States, through his attorney, Robert C. Wolfrum, Assistant Federal Public Defender, to move this Court for an order suppressing as evidence any statements or writings made by Defendant, including, but not limited to, any conversations overheard by agents of the Government, interviews with agents of the Federal Bureau of Investigation, and Missouri or other state law enforcement agencies and any state or federal grand jury, and any physical evidence seized from the person or possession or residence of this Defendant, and as grounds for this motion states:

### BACKGROUND

When Mr. McDonald was indicted in this case on February 24, 2016, he was living in the Philippines.

On March 29, 2016, he was arrested at his residence in Davao, Philippines.  He has been continuously in custody since that arrest.  At the time of his arrest, no warrant had been issued for the seizure or search of any computers or cell phones.  Defendant did not at that time give consent for the

seizure or search of any computers or cell phones. Defendant was flown from Davao to Manila, both in the Philippines. He was incarcerated in Manila until he was returned to the United States.

On April 1, 2016, Mr. McDonald was flown from Manila to the United States, specifically Los Angeles, in the company of at least two FBI agents. From the reports received, it appears to be alleged that Mr. McDonald made statements to agents during the flight and upon arrival in Los Angeles. Reports place the time of arrival in Los Angeles as approximately 5:30 p.m. on April 1, 2016.

Among the items seized in the Philippines and brought to the United States from the Philippines were (1) a DELL Desktop Inspiron 530 Computer, Service Tag Number 3X7XhG1, (2) DELL Laptop Computer Model no. PP31L, CN-OP792H486439430946 A00, and (3) Dell Phone Model No: B88DUO, M_IMEI: 863733012155372.

## PHYSICAL EVIDENCE

1. Any physical evidence seized from the person or possession or residence of Defendant was seized as a result of searches and other illegal intrusions into Defendant's person and property without a valid search warrant issued upon probable cause, and without consent, and not pursuant to a lawful order or any other legal justification in violation of the Fourth Amendment.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Constitution, Amendment IV. The search and seizure here was a governmental search within the protection of the Fourth Amendment. Evidence procured with the participation of government actors implicates the Fourth Amendment. *Lustig v. United States*, 338 U.S. 74 (1949).

Additional supporting authority will be provided after an evidentiary hearing at which time the circumstances of the instant case may be established.

STATEMENTS

2. Any statements, oral or written, made by this Defendant were elicited by coercion without the Defendant being advised of and afforded his rights under the Fifth Amendment of the U.S. Constitution and said statements are therefore involuntary and inadmissible.

The statements were involuntary because:

a) Any alleged statements were made after officers told him that cooperation and talking to the officers would make things easier on and for him.

b) Any alleged statements were made after officers told him that cooperation makes it look good for him.

c) Any alleged statements were made after officers told defendant that they were trying to help him.

d) The mental and physical condition of the defendant at the time of the questioning rendered his statements involuntary. At the time of the questioning by officers, defendant was a 76 year old man who had been taken from his home and held in custody in a Manila custodial facility for several days, then put on a plane to the United States.

3. Any testimony or other evidence relating to or based upon said statements were obtained as a direct result of the violation of Defendant's rights under the Fifth Amendment, as aforesaid, and are therefore inadmissible.

ARGUMENT

I. PHYSICAL EVIDENCE SHOULD BE SUPRESSED UNDER THE EXCLUSIONARY RULE.

The information contained in the application for a warrant to search Mr. McDonald's electronics (computer, laptop, phone, and camera) was obtained either as a result an illegal search, an illegal seizure, or both. The Supreme Court articulates that "[t]he informed and deliberate determinations of

magistrates empowered to issue warrants are to be preferred over the hurried action of officers[.]" *United States v. Ventresca*, 380 U.S. 102, 105-06 (1965). "The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures by the government. Subject to a few narrow exceptions, a warrantless search or seizure violates the Fourth Amendment." *United States v. Zamora-Lopez*, 685 F.3d 787, 789 (8th Cir. 2012), citing *Katz v. United States*, 389 U.S. 347, 357 (1967). None of the few narrow exceptions to the warrant requirement are present in this case.

Mr. McDonald's electronics were packed in his suitcase. While agents did request consent to search his electronics—which Mr. McDonald declined to extend—agents never requested consent to search his suitcase containing the electronics. The search warrant application for Mr. McDonald's electronics, submitted by FBI Special Agent Nikki Badolato, and signed by the Hon. Patricia L. Cohen on May 24, 2016, details the unique serial number of each of the electronics. These unique serial numbers are physically printed on stickers affixed to the devices. No reports indicate that agents had any alternative means of ascertaining the serial numbers of the devices other than by searching Mr. McDonald's suitcase and reading them off of the electronics themselves.

Since agents did not have a warrant to search Mr. McDonald's suitcase, and none of the few narrow exceptions to the warrant requirement are applicable, the serial numbers contained in agents' application for a warrant to search Mr. McDonald's electronics constitute information obtained through an illegal search and/or seizure.

There are five narrow exceptions to the warrant requirement that could arguably apply to this case: the consent exception, the plain view exception, the incident to arrest exception, exigent circumstances exception, and the inventory search exception. However, none of them do. The consent exception, which alleviates the warrant requirement when an individual grants consent to search his or

her property, does not apply in this case. Agents never requested consent from Mr. McDonald to search his suitcase, and he never granted it.

The plain view exception does not alleviate the warrant requirement in this case. This exception allows "[p]olice [to] seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent." *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008). When an item is in a closed container such as a suitcase, it is not in plain view, and therefore the inquiry into the plain view exception stops at the first prong. The Supreme Court, explaining the exception, states that "unless the container is such that its contents may be said to be in plain view," such as being open, or transparent, "those contents are fully protected by the Fourth Amendment." *Robbins v. California*, 453 U.S. 420, 427 (1981) *overruled on other grounds by United States v. Ross*, 456 U.S. 798 (1982). No report indicates that agents viewed the electronics from a lawful vantage point while the suitcase may have been open, and even if so, Mr. McDonald's consumer electronics do not have an incriminating character that is immediately apparent, such as would be true of a burglary kit or narcotics.

The incident to arrest exception does not alleviate the warrant requirement in this case. This exception allows agents to conduct a search "to prevent [defendant] from acquiring a weapon or destroying evidence within his immediate control." *United States v. Hill*, 730 F.2d 1163, 1167 (8th Cir. 1984). However, "Warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in terms of time or distance from the arrest, or no exigency exists." *Hill*, 730 F.2d at 1167 (citation omitted). Mr. McDonald was arrested at 6:35am on March 29, 2016, in Davao, Philippines. The only documented search of Mr. McDonald's suitcase by FBI agents took place on the evening of April 1, 2016, at Los Angeles International Airport—some 3 days after and nearly 7,500 miles away from Mr. McDonald's arrest.

Likewise, exigent circumstances did not exist. "The exigency exception only applies when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action. Recognized situations in which exigent circumstances exist include: danger of flight or escape, danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence, and hot pursuit of a fleeing suspect." *United States v. Santa*, 236 F.3d 662, 669 (11th Cir. 2000) (citations omitted). None of the recognized situations in which exigent circumstances exist apply to this case. Mr. McDonald was under arrest at the time his suitcase seized by government agents, and has remained in custody from that point. He had no ability to retrieve a weapon from his suitcase, nor to destroy any evidence contained in it. Any concerns for the safety of agents and of the public should have been alleviated by Mr. McDonald having to clear security at least twice on his way to Los Angeles in the custody of FBI agents—and in any case, such concerns would not be adequately addressed by searching Mr. McDonald's suitcase in Los Angeles, 3 days after arrest.

Finally, the inventory search exception does not alleviate the warrant requirement in this case. "A warrantless inventory search must be done pursuant to standard police procedures and for the purpose of protecting the [container] and its contents." *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998), citing *S. Dakota v. Opperman*, 428 U.S. 364 (1976). FBI Agent Nikki Badolato's affidavit submitted with the search warrant for Mr. McDonald's electronics, states that arresting agents seized Mr. McDonald's luggage and entered it into FBI evidence—which is inconsistent with the purpose being to protect Mr. McDonald's property rather than to collect evidence. Conflicting with Agent Badolato's affidavit are the property forms filled out by FBI Agent Randall Devine. The form provides four check-box options to indicate the nature of the transaction, which are: 'Received From', 'Returned To', 'Released To', and 'Seized'. Agent Devine checked 'Received From' on the forms, contradicting Agent's Badolato's statement in her affidavit that Mr. McDonald's property was seized. Conspicuously,

whereas Agent Devine signed the forms on the 'Received By' line, there is no signature on the 'Received From' line—where Mr. McDonald's signature would presumably be if the property was received from him in an inventory search.

The exclusionary rule is applicable in this case. Since agents did not have a warrant to search Mr. McDonald's suitcase and none of the exceptions to the warrant requirement apply, agents' inclusion of the electronics' serial numbers in the search warrant application means that agents conducted an illegal search and/or seizure in order to obtain the serial numbers. The Supreme Court writes, "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree. It extends as well to the indirect as the direct products of unconstitutional conduct." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citations omitted).

II.     MR. MCDONALD'S STATEMENTS SHOULD BE SUPRESSED BECAUSE THEY WERE INVOLUNTARY.

The statements that Mr. McDonald made to agents were involuntary, and should be suppressed. In the Eighth Circuit, "A statement is involuntary when it is extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. In applying this test, we look at the totality of the circumstances…[.] Specifically, we consider factors such as detention length, the repetitive and prolonged nature of questioning, and the accused's age." *Simmons v. Bowersox*, 235 F.3d 1124, 1132-33 (8th Cir. 2001) (internal citations omitted). No one factor—length of detention, repetitive and prolonged nature of questioning, or age—is dispositive; the inquiry is into whether the totality of the circumstances overbear the defendant's will and critically impair his capacity for self-determination. The government bears the burden of proving that a statement is voluntary by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

In this case, implied promises and all three factors—length of detention, repetitive and prolonged nature of questioning, and age—combined to create a totality of circumstances in which Mr. McDonald's will was overborn and his capacity for self-determination critically impaired, rendering his statements involuntary and necessitating their suppression.

FBI agents made an implied promise to Mr. McDonald. They told him that if he were to tell the truth, things would be easier for him. The Supreme Court notes that "a confession, in order to be admissible, must be free and voluntary; that is … not obtained by any direct and implied promises, however slight." *Shotwell Mfg. Co. v. U.S.*, 371 U.S. 341, 347 (1963), quoting *Bram v. U.S.*, 168 U.S. 532, 542-43 (1897). While "a promise made by law enforcement…does not render a confession involuntary per se," it is "one circumstance to be considered" when assessing the totality of the circumstances. *Simmons v. Bowersox*, 235 F.3d at 1133. In Eighth Circuit cases in which implied promises of the type made by FBI agents to Mr. McDonald in this case were made to the defendants but the Eighth Circuit did not find the defendants' statements to be involuntary as a result, the implied promises were made in a different totality of circumstances than present in this case. *See Bolder v. Armontrout*, 921 F.2d 1359 (8th Cir. 1990) (Agents said that telling the truth would be better for defendant, defendant was not subject to lengthy detention, questioning was not repetitive, defendant was not elderly); *Bannister v. Armontrout*, 4 F.3d 1434 (8th Cir. 1993) (same). Although the language used by agents in *Bolder*, *Bannister*, and this case is similar, the totality of the circumstances—further discussed below—in this case distinguishes it from *Bolder* and *Bannister*.

The length of Mr. McDonald's detention was significant. Mr. McDonald was first arrested at his home in Davao, Philippines at 6:35am on March 29, 2016. Nearly 6 hours later, he was flown from Davao to Manila, and placed in a Philippine Bureau of Immigration detention facility in Bicutan, Philippines. Mr. McDonald remained at the detention facility from the afternoon of March 29, 2016

through the evening of April 1, 2016—approximately 72 hours. On April 1, 2016, Mr. McDonald was flown from Manila to Los Angeles—a flight approximately 12 hours long, on which he was interviewed by agents. Once in Los Angeles, his detention continued as he was taken to the Metropolitan Detention Center, and turned over to the Bureau of Prisons for eventual transport to St. Louis. In total, Mr. McDonald's detention lasted at least 96 hours, at least 72 of which had elapsed prior to agents interviewing him.

Mr. McDonald's questioning was repetitive. He was asked by agents whether he had ever touched Gretchen. He stated that he did not want to answer those questions. Agents persisted, and went on to ask whether there was ever any oral sex. The report indicates that Mr. McDonald remained silent and would not answer the question. Despite Mr. McDonald's unwillingness to discuss the matter or answer questions pertaining to it, the report indicates that Mr. McDonald eventually provided an answer, in the face of repetitive questioning.

Mr. McDonald was 76 years old at the time of his arrest. The implied promises from FBI agents and his lengthy detention, repetitive questioning, and advanced age, combine to form a totality of circumstance in which Mr. McDonald's will was overborn, his capacity for self-determination critically impaired, and his statements involuntary. Since his statements were involuntary, they must be suppressed.

## CONCLUSION

For the reasons stated above, Mr. McDonald respectfully requests this Court to grant this motion to suppress physical evidence and statements.

                Respectfully submitted,

                /s/Robert C. Wolfrum
                ROBERT C. WOLFRUM
                Assistant Federal Public Defender

>1010 Market Street, Suite 200
>St. Louis, Missouri 63101
>Telephone: (314) 241-1255
>Fax: (314) 421-3177
>E-mail: Robert_Wolfrum@fd.org

>ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Rob Livergood, Assistant United States Attorney.

>/s/Robert C. Wolfrum
>ROBERT C. WOLFRUM
>Assistant Federal Public Defender