UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STAES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16CR83 HEA |
| | ) | |
| MICHAEL BRUCE McDONALD, | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on November 11, 2017 Report and
Recommendation of Magistrate Judge Noelle C. Collins addressing Defendant's
Motion to Dismiss Due to Unconstitutional Vagueness [Doc. No. 46], Motion to
Suppress Physical Evidence and Statements [Doc. No. 47], Supplemental Motion
to Suppress [Doc. No. 56], Supplemental Motion to Suppress Physical Evidence
[Doc. No. 62], and the Government's responses. An evidentiary hearing was held
July 27, 2017. Post hearing briefs were filed by both parties. Judge Collins
recommends that the Motion to Dismiss Due to Unconstitutional Vagueness, the
Motion to Suppress Physical Evidence and Statements, the Supplement to Motion
to Suppress, and the Supplemental Motion to Suppress Physical Evidence be
denied. Defendant filed a written objection to this recommendation, and the

Government filed a written response to Defendant's objection to this recommendation.

When a party objects to the magistrate judge's Report and Recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objected. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)). The Court has reviewed the entire record for this purpose, including the transcript of the hearing and all exhibits.

### <u>Defendant's Motion to Dismiss Due to Unconstitutional Vagueness</u>

Defendant objects to the Recommendation's conclusion that Defendant's Motion to Dismiss Due to Unconstitutional Vagueness should be denied. Defendant is charged with transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1). He contends that the statute is void because the term "lascivious" in the statute's language is vague and not adequately defined. However, he fails to present any further authority for this position.

Judge Collins set out the applicable Eighth Circuit and United States Supreme Court law with respect to the vagueness doctrine. She determined that, on its face, the term lascivious gives fair notice of the conduct prohibited to persons of average intelligence. There is no support for the argument that the statute authorized or encouraged discriminatory enforcement. Applying the law,

lascivious conduct has been found to have definite legal meaning and is, thus, not a term vulnerable to unconstitutional wholly subjective judgement. Judge Collins thoroughly and correctly concluded that Defendant's Motion to Dismiss Due to Unconstitutional Vagueness should be denied. The objection is overruled.

<u>**Defendant's Motion to Suppress Physical Evidence and Statements, Supplement to Motion to Suppress, and Supplemental Motion to Suppress Physical Evidence**</u>

**A. No joint venture occurred between American and Filipino law enforcement**

Defendant objects to Judge Collins' finding that there was "no evidence to support Defendant's joint venture/agency claim." In support of his agency claim, Defendant offered non-binding precedence from *United States v. Barona*, in. 56 F.3d 1087 (9th Cir. 1995). Defendant argues that a joint venture was carried out by both foreign and United States law enforcement and that the Fourth Amendment exclusionary rule applies to protect United States citizens from illegal search and seizures, even in foreign countries. If Defendant's assertion is valid, he can invoke Fourth Amendment protection in the extraterritorial search and the law of the foreign country must be consulted as part of the reasonableness determination of the search and seizure, a dispositive point in this analysis.

Nothing presented by Defendant gives credence to his position that the law enforcement officers of the Philippines were agents of the United States. In *Barona*, the court clearly defined a Joint venture as a substantial *investigation*

action between the United States and foreign officials. Further, in *Barona* a wiretap was conducted on foreign soil during a joint criminal investigation. *See id* at 1090-95; *see also United States v. Stokes*, 726 F.3d 880, 890-91 (7th Cir. 2013). These facts are distinguishable. Here, there was no "investigatory" aspect. The sovereign countries' agencies merely shared information to coordinate Defendant's deportation. The Philippine government was not involved in the FBI investigation of child pornography or the indictment by the federal grand jury in Saint Louis. Agent Atsatsang strictly adhered to the role of observer after supplying information to the Filipino police about Defendant's indictment and revocation of his passport. Moreover, the record is clear that the Philippine government involvement was voluntary, while the FBI had no law enforcement authority in the Philippines. Thus, consistent with the case law and because there was no joint venture/agency between the countries, "neither the Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials" in this case. *United States v. LaChapelle*, 869 F.2d 488, 489 (9th Cir. 1989). The objection is overruled.

**B. The Search and Seizure of Defendant's Suitcase Was Valid**

**i. Warrantless Seizure of the Suitcase in the Philippines**

Defendant contests Judge Collins' conclusion that the Philippine government cannot be said to have seized his suitcase for evidence when officials facilitated his departure from Davao. He also contends that the suitcase was taken

from his home without warrant, the FBI was aware what items were in the suitcase, and the FBI asked the Filipino law enforcement to remove those items specific to its investigation. Judge Collins thoroughly set out the applicable law; Defendant likewise acknowledges the Supreme Court has not addressed the issue of whether an extraterritorial search meets the warrant requirement or the more general reasonableness requirement of the Fourth Amendment. *See In re Terrorist Bombings*, 552 F.3d 157, 167, 171-74 (2d Cir. 2008).

As discussed *supra*, the Fourth Amendment and its exclusionary rule generally do not apply to law enforcement activities of foreign authorities acting in their own country. *United States v. Busic*, 592 F.2d 13, 23 (2d Cir. 1978). An exception to the inapplicability of the exclusionary rule occurs if "the circumstance of the foreign search and seizure are so extreme that they 'shock the judicial conscious,' . . . requiring exclusion of the evidence." *LaChapelle* at 489. This standard is meant to protect against conduct that violates fundamental, international norms of decency. *United States v. Mitro*, 880 F.2d 1480, 1483-84 (1st Cir. 1989). The record here contains no evidence of torture, terror, or coercive behavior by the Filipino law enforcement officers or the FBI.

Even in the United States, law enforcement officers do not always seek a warrant to enter a home and may enter lawfully under a myriad of factual circumstances. *See United States v. Matlock*, 415 U.S. 164, 171 (1974). For

example, courts recognize exigency and that police officers serve a "community caretaker" function such that they may enter a residence without warrant. *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978). Here entry was justified; Defendant testified that three minor female children were inside the home and Exhibit 1 showed strong evidence that Defendant was molesting local children.

Defendant further contends that the Recommendation erroneously found he consented to the seizure of his suitcase because he was thankful and did not object to his wife packing it. Consent may have been given by Defendant or another with common authority over the items. See *Matlock* at 171. Defendant did not contend that he or his wife withheld consent preventing law enforcement officers from entering his residence. Further, the record contains no objection by Defendant, who testified that an officer accompanied him into the home while he retrieved his medication, and that he did not object to his wife packing his suitcase; he "approved it." The facts support the inference that the Filipino law enforcement officials legally entered the home and helped Defendant's wife remove the suitcase she had packed to facilitate his departure from the Philippines, not as evidence.

Additionally, Defendant contests the Recommendation's finding that the FBI agents took steps to consult with legal counsel and that Defendant was processed through the Philippine legal system. Defendant provides no authority for these contentions and the arguments are not persuasive.

There is no evidence that the FBI was aware that items from Defendant's home were in the suitcase. Additionally, the facts directly refute the inference that Filipino law enforcement removed items specific to the FBI investigation at its request. Defendant's Fourth Amendment rights were not implicated, and his rights were not violated. The objections are overruled.

### ii. Inventory Search of The Suitcase at The Border

Defendant objects to Judge Collins' factual and legal findings that the suitcase was legally searched and inventoried by the FBI. In this case, the Fourth Amendment did not extend to the acts of Filipino officials, and thus the Philippine Constitution is of no relevance. However, the search of Defendant's suitcase within the United States is Constitutionally protected. Defendant argues that United States law enforcement officials did not have a warrant to search his suitcase when he arrived in Los Angeles, and that the airport search at LAX and the related evidence should be excluded as "fruit of the poisonous tree."

Inventory searches and border searches have long been recognized as exceptions to the Fourth Amendment warrant requirement. Judge Collins thoroughly set out the applicable Eighth Circuit and United States Supreme Court law with respect to inventory searches, standardized police procedures, and the border search doctrine.

Defendant argues that the FBI was aware of the contents in his suitcase and that he told the FBI they did not have his consent to search the suitcase. The evidence directly refutes Defendant's claim that the FBI knew the contents of the suitcase because they were not present when the suitcase was packed and did not open the suitcase until the items were inventoried in the United States. The record shows that the FBI agents accompanying Defendant on his flight to the United Sates were aware he had a suitcase and a carry-on item. An FBI agent became aware of the potential contents of the suitcase when Defendant brought it up during in-flight questioning. Defendant stated that there may be items used to take pictures in the suitcase his wife had packed. In response, Agent Secker asked for the password and consent to search the items and Defendant said "no." Defendant then asked what would be in it for him if he gave consent to search the computer, and the officer informed him that he had no authority to offer leniency or deals. Agent Devine was assigned to secure Defendant and take him to his initial appearance; Agent Devine met Defendant's flight at LAX airport.

To evaluate the reasonableness of an inventory search, courts determine whether it is conducted according to standardized police procedures. *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011). Here, Agent Devine testified that an inventory search was standard procedure to keep a Defendant's items safe while he was in custody. Agent Devine testified that Defendant had no one to meet him at

the airport and that he was under arrest to be housed at a detention facility until his initial appearance the next day. Thus, the inventory search of the suitcase was justified under the totality of the circumstances, to: 1) protect the owner's property while it remains in police custody; 2) protect the police against claims or disputes over lost or stolen property; and, 3) protect the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Additionally, Agent Devine conducted the search of Defendant's suitcase at the border where Defendant had no reasonable expectation of privacy. *See United States v. Ramsey*, 431 U.S. 606, 616 (1977).

Defendant also argues that the officer's use of the computer's serial numbers created an invalid and unrelated search. The case law offered in support of this position is not persuasive. The evidence directly refutes the inference that the FBI had prior knowledge of the suitcase contents or used the inventory search to gain evidence for investigatory purposes. *See United States v. Beal*, 430 F.3d 950, 954 98t h Cir. 2005). Moreover, the applicable case law permits officers to keep their eyes open for incriminating items discovered during an inventory search. There is no evidence that the FBI was aware of specific items from Defendant's home in the suitcase. Thus, the search of the suitcase was a reasonable exception to the warrant requirement and Defendant's Fourth Amendment rights were not violated. The objections are overruled.

**C. Defendant Waived His Right to Remain Silent and He Was Not Coerced**

Defendant objects to the Recommendation's conclusion that Defendant's incriminating statements were made voluntarily. Here, Defendant fails to present any further authority for this position. Judge Collins correctly found that Defendant's claim that his will was overborn during the lengthy flight and repetitive questioning was not supported by the record.

The appropriate test for determining the voluntariness of a confession is "whether in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir. 1992). When Defendant was questioned, he was advised of his rights on two separate occasions and signed the forms presented to him. He chose to answer most of the questions and declined to answer others. Moreover, Defendant's previous work experience as a police officer leads to a strong inference that he is well versed in his *Miranda* rights, and thus, knowingly, voluntarily waived his right to remain silent. Because the statements were not the result of any threats, promises or coercion by the officers, his statements were voluntary. The objection is overruled.

**D. The Computer Search Warrant Was Supported by Probable Cause**

Defendant objects to the Recommendation's conclusion that the search warrant obtained in this case was supported by probable cause. Defendant fails to

present any further authority for this position. To be valid, a warrant must be based upon a finding that by a neutral and detached judicial officer there is probable cause to believe that evidence, instrumentalities, or fruits of a crime or contraband may be found in the place to be searched. *Johnson v. United States*, 333 U.S. 10 (1948). Further, it is reasonable for investigators who executed the warrant to rely upon good faith. *United States v. Leon*, 468 U.S. 897 (1984). The record here supports Judge Collins' finding that the warrant and search was based on probable cause and relied on good faith.

Further, Defendant objects to the Recommendation's conclusion that investigators did not violate the Federal Rules of Criminal Procedure, Rule 41 or the Fourth Amendment's warrant requirement by re-examining the Dell hard drive seized in this case. Here, Defendant's argument and authority are not persuasive. At the hearing, Detective Slaughter explained that the second forensic examination conducted on May 14, 2017 was only of a mirror image of the desktop computer, consistent with *Johnson*, which was already saved on a police server since May 2016. The original evidence was not re-examined. Moreover, the scope of the 2017 search was consistent with the original search parameters. This case is not a case where the government used a general warrant to mine unauthorized digital data for use against Defendant in violation of the Fourth Amendment. Here, investigators

did not violate the Fed. Rules of Crim. P. 41 or the Fourth Amendment's warrant requirement by re-examining the Dell hard drive. The objections are overruled.

Judge Collins' Recommendation of denial of Defendant's Motions is based on sound legal analysis. The Court agrees with Judge Collins' conclusions in their entirety. The Recommendation is adopted *in toto*.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Due to Unconstitutional Vagueness [Doc. No. 46], Motion to Suppress Physical Evidence and Statements [Doc. No. 47], Supplement to Motion to Suppress Doc. No. 56], and Supplemental Motion to Suppress Physical Evidence [Doc. No. 62], are **DENIED.**

Dated this day 26th of February, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE