IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CR 83 HEA |
| | ) |
| MICHAEL MCDONALD | ) |
| | ) |
|     Defendant. | ) |

### MOTION IN LIMINE

COMES NOW defendant MICHAEL MCDONALD, through his attorney, Robert C. Wolfrum, Assistant Federal Public Defender, and asks the Court for an Order precluding the government from referring to or allowing its witnesses to testify about certain matters and certain evidence during the trial of this case.  The testimony or evidence described in this Motion is irrelevant to the allegations in the indictment and/or will have a prejudicial effect on the factfinder that outweighs any probative value.

*Introduction*:

1.  Mr. McDonald is charged with transporting six photographic images of child pornography via the internet in violation of 18 U.S.C. § 2252A (a) (1).

2.  The investigation of this case began when a man was arrested by St. Louis County Police in August, 2015, for conspiring to possess child pornography.  In the course of that investigation and with the arrested man's consent, a police officer took over his email account and Box.com account and began communicating via email with a person who the police believed was Mr. McDonald, an American citizen living in the Philippines.

3.  The police determined that Mr. McDonald was a registered sex offender due to a 2002 conviction in the State of California and that he was currently living in the Philippines.

4. In February, 2016, an Indictment charging transportation of child pornography was filed against Mr. McDonald in the Eastern District of Missouri, based on emails and photographs sent to the St. Louis County police officer by a person who was believed to be Mr. McDonald.

5. In March, 2016, Mr. McDonald was taken into custody in the Philippines and his desktop computer, lap top, and phone were seized from the home where he lived with his wife and her three nieces.  After he was arrested, the nieces were interviewed in the Philippines.

6. On the flight back to the United States, Mr. McDonald was interviewed by an agent of the Federal Bureau of Investigation ("FBI").  Upon arrival in Los Angeles, Mr. McDonald was in the custody of FBI agents until he was turned over to the custody of the United States Marshals Service.

7. Thereafter, a search warrant was issued for the computers and the phone that were seized in the Philippines and the items were electronically searched.

*Evidence to Be Excluded:*

8. Prior Accusations:

   (a) Mr. McDonald is 79 years old.  The government has given notice (Doc. # 124 at 13) that it intends to introduce hearsay evidence that four persons (identified as C.T., Jane Doe #1, Jane Doe #2, and Jane Doe #3), made accusations that Mr. McDonald touched them inappropriately and sexually when they were children.  It appears these incidents occurred sometime between 1982 (36 years ago) and 2001 (17 years ago).  Additionally, the government intends to present hearsay evidence that S.M., allegedly an ex-fiancee of Mr. McDonald, saw him looking at what she believed was child pornography and observed photos that she believed depicted him engaged in sexual encounters with persons she thought were children. None of these accusations are admissible under Fed. R. Evid. 414 (Evidence of Similar Crimes in Child Molestation Cases) because they are irrelevant and not similar to

2

his present charge, would involve hearsay, and the probative value of their admission is substantially outweighed by the danger of unfair prejudice.

(b) These allegations never resulted in convictions either because no charges were filed or because charges were dismissed. The introduction of this evidence, ostensibly without these witnesses' testimony, would be hearsay and would deny Mr. McDonald his right to confront witnesses. *Compare United States v Withorn,* 204 F.3d 790, 793 (8th Cir. 2013) (*Testimony of victim of prior sexual assault for which defendant was adjudicated may be admissible under Rule 414*); *see also United States v. Crow Eagle,* 705 F.3d 325 (8th Cir. 2013). Evidence that may be admissible under Rule 414 must still meet the other requirements of the Federal Rules of Evidence's prohibition against hearsay and application of the probative value/prejudice balancing. *United States v. Larson,* 112 F.3d 600, 604 (2nd Cir. 1997) (The legislative sponsors of Rule 414 recognized that the Rule permitted propensity evidence but concluded that in other respects the Rules of Evidence, including restrictions on hearsay and Rule 403, should still apply).

(c) Where, as in this case, there may not be sufficient competent and admissible evidence to support the government's allegation that it was Mr. McDonald who transported child pornography over the internet, the admission of this highly prejudicial hearsay evidence is not harmless, even in a bench trial. *See e.g. United States v. Joseph,* 781 F.2d 549, 553 (6th Cir. 1986). In *Joseph,* during a bench trial the district court considered inadmissible, objected-to evidence in reaching its verdict. Because the admissible evidence was insufficient to support conviction as to certain counts, allowing testimony about and considering inadmissible evidence required reversal of those counts. *Id.* at 554. *See also United States v. J.H.H.,* 22 F.3d 821, 829 (8th Cir. 1994) (In a bench trial the improper

3

admission of evidence is only harmless if sufficient admissible evidence exists in the record to establish the defendant's guilt) (citing *United States v. Joseph*). At this point the Court has not yet heard any evidence to support a conviction, therefore, a ruling in favor of the government on this issue would constitute reversible error.

(d) While Congress has determined that in a trial for a violation of 18 U.S.C. 2252A, (transporting child pornography), evidence relating to prior child sexual contact does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of improper bias or even passion regarding such highly charged accusations. To mitigate this risk, after conducting a Rule 414 analysis, the district court must carefully consider whether prior bad acts evidence should be excluded pursuant to Rule 403 (granting the Court discretion to exclude evidence for prejudice, waste of time, or other reasons). The accusations against Mr. McDonald do not further the government's charge that he knowingly transported child pornography. *United States v. Evans,* 802 F.3d 942, 945 – 46 (8th Cir. 2015) (To be relevant and admissible, evidence under Rule 414 must further the government's claim that the defendant committed the crime or rebut the defendant's claim that the material with which he is charged was planted on his computer). There is no similarity between the accusations and his current charge because, and with the exception of the accusation from S.M. (the ex-fiancee), the offenses alleged did not involve images of child pornography. *See United States v. Emmert,* 825 F.3d 906, 909 (8th Cir. 2016) (To be admissible, evidence under Rule 414 must be similar based on situational factors). The accusations occurred well over ten years ago. Furthermore, because of their dissimilarity from the current charge, evidence of these prior accusations have limited probative value under Rule 414 when weighed against the likelihood that these accusations will unfairly

4

prejudice the Court against Mr. McDonald irrespective of the evidence in this case. *United States v. Loughry,* 660 F. 3d 965, 970 – 973 (7th Cir. 2011) (Probative value of pornography found in defendant's home, especially "hard core" child pornography, none of which he distributed, was only weakly probative of intent when he was charged with distribution of child pornography). In *United States v. Luger*, 837 F.3d 870, 874 (8th Cir. 2016), the Eighth Circuit permitted minor victims to testify regarding prior sexual molestation where defendant was on trial for sexual molestation of a child (a similar offense) but warned that even where evidence is admissible under Fed. R. Evid. 413, 414, "the district court is required to conduct careful analysis of prior offenses to determine that they are in fact probative of propensity and are not overly prejudicial by carefully considering the actual similarity of the conduct in question." *See also United States v. Hough,* 385 Fed. Appx. 535 (6th Cir. 2010) (unpublished) (Having conducted probative value vs. prejudice balancing test, trial court was correct in excluding evidence of defendant's prior child molestations from trial for attempting to receive and possession of child pornography due to dissimilarity of offenses).

(e) Finally, evidence of these prior accusations is not admissible on cross-examination if Mr. McDonald chooses to testify unless he addresses them in his direct testimony or they are somehow relevant to matters raised in his direct testimony. *See* Fed.R.Evid. 611(b) (Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility). Therefore, unless Mr. McDonald opens the door to questions regarding these past accusations or places his general character into evidence, any questioning regarding the prior accusations are inadmissible. *See United States v. Crawford,* 438 F.2d 441 (8th Cir. 1971) (Defendant who took stand and denied he had sold drugs to specific prosecution witnesses did not place his general character in issue so as to permit

5

cross-examination as to his contacts and relationships with others who were drug users or sellers).

9. <u>Statements of Mr. McDonald to Law Enforcement</u>:

   (a) The government has given notice (Doc. # 124 at 12) that it intends to introduce Mr. McDonald's statements to Agents Secker and Dockery during an interrogation that occurred while en route from the Philippines to the United States on or about April 1, 2016. They include:

   - Statements concerning matters of a sexual nature that supposedly occurred during his childhood.

   - Statements about his supposed attraction to young males.

   - Statements about matters of a sexual nature that supposedly occurred when he was a police officer decades prior to the acts charged in this case.

   - Statements about a particular place in the Philippines where one could have sexual contact with a minor.

   - Statements about prior sexual contact with minors and a prior conviction of the defendant.

   - Statements about prior allegations against him of a sexual nature.

   Mr. McDonald objects to the admission of any of these or other statements unrelated to the allegations in the Indictment are irrelevant and/or that their prejudicial effect outweighs any probative value. Fed. R. Evid. 401 & 403. Additionally, neither the above-listed statements of Mr. McDonald nor other statements he may have made that are comparably unrelated to the allegations in the Indictment, constitute admissions to his offense under Fed. R. Evid. 801(d)(2).

   (b) During the interrogation that occurred while en route from the Philippines to the United States, Mr. McDonald did not give his consent to search his personal computer, digital

6

    camera, and telephone.  Defendant objects to the admissibility of any testimony or evidence regarding his refusal of consent to search these items because it is irrelevant to the allegations in the indictment and/or because its prejudicial effect outweighs any probative value.  Fed. R. Evid. 401 & 403.

(c) Mr. McDonald's assertion of his constitutional right to refuse consent to search would also violate his right to a fair trial, be improper, and should the Court prohibit such questioning, may constitute prosecutorial misconduct.  *See e.g. United States v. Moreno,* 233 F.3d 937, 941 (7th Cir. 2000) (A comment on a defendant's refusal to consent to a search may be improper); *United States v. Thame,* 846 F.2d 200, 207 (10th Cir. 1988) (It is improper for a prosecutor to comment on a defendant's refusal to consent to a search); *United States v. Taxe,* 540 F.2d 961, 969 (9th Cir. 1976)("the prosecutor's comments on the Taxes' refusal to consent to a search of their trucks was misconduct.").

(d) The statements allegedly made by Mr. McDonald while en route from the Philippines to the United States on or about April 1, 2016, were the subject of pretrial motions as fully briefed in Mr. McDonald's Post Hearing Brief (Doc. # 74), Objection to the Report and Recommendations of the Magistrate Judge (Doc. # 87), and Supplemental Motion to Suppress Statements (Doc. #103).  These Motions and Objections are renewed and provide additional basis for the Court to exclude them from consideration when deciding if the United States has met its burden to prove the charge against Mr. McDonald beyond a reasonable doubt.

10.  <u>Nieces of Mr. McDonald's Wife - Birth Certificates:</u>

(a) The government has given notice (Doc. # 124 at 9) that it intends to introduce the purported birth certificates of Mr. McDonald's wife's minor nieces - copies of which have been

7

supplied in discovery. The certificates are from the Phillipines and the circumstances of how the nieces came to be in the custody of Mr. McDonald's wife are not entirely clear. Without at least final certification as required by Rule 902(3), the fact that versions of the certificates were provided in discovery did not realistically give defense counsel the ability to investigate the documents' authenticity and accuracy. In the Philippines, there has been a long-standing problem of "simulated births" which is a method of adoption where birth certificates are created containing forged signatures and birth information in order to make it appear that a certain child was born to a person who is not his/her biological mother.[1] These types of birth certificates are often created when a child is born out of wedlock or is abandoned by his or her true parents. In this case, where the nieces were apparently "adopted" by Mr. McDonald's wife, the government has not given "good cause" to allow the Court to exercise its discretion and vouch for the accuracy of the records the government seeks to admit into evidence under Federal Rule 902(3) (A) or (B). Without at least a "final certification" from a secretary of the United States embassy or legation, consul general, vice consul or consular agent of the United States, or diplomatic or consular office of the Philippines assigned or accredited to the United States, the birth certificates are not self-authenticating under Fed. R. Evid. 901 & 902 (3).

---

[1] Simulation of birth is defined under Section 3 (j) of Republic Act 8552 or the Domestic Adoption Act of 1998 as "the tampering of the civil registry making it appear in the birth records that a certain child was born to a person who is not his/her biological mother, causing such child to lose his/her true identity and status." *See* http://www.spaslaw.com/2007/08/25/ampon-the-dilemma-of-simulated-births/ (*See* Comment dated January, 2016, describing a "simulation of birth" occurring as recently as 2006); *See also* www.senate.gov.ph/lisdata/55424956!.pdf. (Text of law extending amnesty to individuals who engaged in "simulated births" for ten years due to the small number of applicants who availed themselves of the amnesty that was passed in 1998).

8

11. <u>Electronic Evidence: E-mails, Cloud Storage (BOX files), Dell Desktop Computer:</u>

  (a) The government has given notice (Doc. # 124 at 5-9) that it intends to introduce evidence of:

    1. e-mails purportedly sent & received by "Mac" and "Jee" (identified as James Ehrenstrom),

    2. e-mails purportedly sent & received by Sgt. Adam Kavanaugh and "Jee",

    3. e-mails purportedly sent & received by "Mac" and Sgt. Kavanaugh,

    4. BOX files where "Mac" allegedly stored and shared images, and

    5. images from a Dell desktop computer seized from the home of Mr. McDonald and his wife in the Philippines.

*E-mails*:

  (b) In 2015, Sgt. Adam Kavanaugh, an officer of the St. Louis County Police Department, was investigating subjects interested in child pornography on Craigslist. In the course of this investigation, the officer began corresponding under-cover with "Jee" and they agreed to meet so that the officer could provide "Jee" with some child pornography in person. Any e-mail correspondence (or images shared via e-mail) between the St. Louis County police officer and "Jee" (identified as James Ehrenstrom) is hearsay and is wholly irrelevant to the government's claim that Mr. McDonald transported child pornography. Mr. McDonald was not a party to nor did he participant in any of the conversations in these emails. The e-mails have no purpose in this case and should be excluded as evidence at trial.

  (c) At the meeting between Mr. Ehrenstrom and Sgt. Kavanaugh, Mr. Ehrenstrom was arrested and he made statements to the police that he was corresponding with "Mac" from the Philippines who was sending him or giving him access to child pornography via a Cloud Storage site called Box.com. Mr. Ehrenstrom agreed to allow the police officer to take over his e-mail account (jee1230@hotmail.com). Sgt. Kavanaugh, posing as "Jee," then corresponded with a person who he believed was Mr. McDonald at the following addresses:

9

    justmac234@yandex.com and mac92648@yahoo.com.  Any e-mails (or images shared via e-mail) that were recovered from Mr. Ehrenstrom's computer while Sgt. Kavanaugh was communicating via e-mail with a person he believed was Mr. McDonald are inadmissible because this communication occurred on Mr. Ehrenstrom's computer and not Mr. McDonald's.  Therefore, the government will not be able to provide a sufficient foundation to establish that Mr. McDonald is the person "Mac" with whom Sgt. Kavanaugh was communicating.  Mr. McDonald objects to any law enforcement officer testifying in a conclusory manner that certain e-mails or internet communications were produced by or sent by the defendant unless that witness has personal knowledge of who the sender was.  The determination of who sent e-mails or internet communications, who owned, contributed to, or gave access to a Box.com account are questions of fact to be decided by the trier of fact.  Defendant anticipates that the evidence as to the sender of any e-mail will be circumstantial.

(d)  Any e-mails (or images shared via e-mail) between "Jee" and "Mac" that occurred *before* Mr. Ehrenstrom's arrest, constitute inadmissible hearsay and there is insufficient evidence to establish that Mr. McDonald is the person "Mac" with whom "Jee" was corresponding.  Furthermore, some of the e-mails between "Jee" and "Mac" contain statements from "Mac" (which may or may not have been true), that he had taken photos of minor girls that were shared with "Jee" in a Box.com account, and comments from both "Jee" and "Mac" regarding those photographs and the girls.  This correspondence contains highly inflammatory statements regarding sexual contact with minors that are irrelevant to the allegations in the indictment and the prejudicial effect of which outweighs any alleged probative value under Fed. R. Evid. 403.  *See e.g. United States v. Manning,* 738 F.3d 937, 941 (8th Cir. 2014) (In a trial involving receipt and possession of child pornography, the

10

District Court granted defendant's pretrial motion in limine to exclude sections of chats detailing defendant's abuse of children).

(e) Additionally, the e-mails (or images shared via e-mail) the government intends to introduce, sent to and from Mr. Ehrenstrom's computer while Sgt. Kavanaugh or Mr. Ehrenstrom were communicating with a person the government believes was Mr. McDonald, include many statements and images that have no connection whatsoever with the images Mr. McDonald is charged with transporting. These e-mails are therefore irrelevant to the offense charged.

(f) Additionally, Defendant objects to any evidence of alleged transportation or transmission of images occurring outside the dates charged in the indictment.

(g) The government may be suggesting that the e-mails between Sgt. Kavanaugh, Mr. Ehrenstrom, and "Mac" (a person the government alleges was Mr. McDonald), are "inextricably intertwined" with the evidence of the charges against Mr. McDonald. *See* Doc. # 124 at 15. If the Court determines that the emails are "inextricably intertwined," Mr. McDonald requests that they be redacted to include only those statements that the Court deems are part of a transaction that forms the basis for the charge, are necessary to make the case comprehensible, explain the circumstances surrounding the crime, or are otherwise relevant under Fed. R. Evid. 401. The Court has the authority to make such redactions. For example, in *United States v. Thetford,* 806 F.3d 442, 447 (8th Cir. 2015), the defendant was charged with felon in possession, interstate stalking, and witness tampering. The Court properly admitted evidence of defendant's previous plea to wire fraud and felon in possession, the crime which was the reason defendant engaged in interstate stalking and witness tampering, because the pleas/convictions and the circumstances that led to it were "inextricably intertwined" with charged crime. *Id.* However, the court redacted any

11

information about the fact that the defendant also pled guilty to a possession of child pornography offense since it was not related to the current charge and was prejudicial. *Id.*

*BOX.com Files*:

(h) During the course of Sgt. Kavanaugh's investigation of Mr. Enhrenstrom and Mr. McDonald, he accessed a folder and subfolders in a Box.com account that he believed belonged to Mr. McDonald. Some of them are images of children who are different from the children in the images listed in the Indictment.

(i) The government has given notice that it intends to introduce images from those Box.com folders that are different from those listed in the Indictment.  Doc. # 124 at 7 – 8.  As with the e-mail correspondence, the government will not be able to provide a sufficient foundation to establish that Mr. McDonald is the person "Mac" who placed those images in or had access to the Box.com account folders or the person who gave access to the folders in that account to any other person.

(j) Mr. McDonald objects to any law enforcement officer testifying in a conclusory manner that the images contained in the Box.com folders were produced by or saved at that location by Mr. McDonald unless that witness has personal knowledge of who saved them there. The determination of who owned, controlled, contributed to, or allowed access to a Box.com account is an issue of  fact to be determined by this Court only upon a proper foundation and submission of admissible evidence.

(k) Finally, the images in the Box.com folders are irrelevant to the offense charged and the prejudicial effect if the Court were to consider them in adjudicating this case outweighs any alleged probative value under Fed. R. Evid. 403.

*Dell Desktop Files:*

(l) The government has given notice (Doc. # 124 at 8) that it intends to introduce image files of child pornography allegedly located on Mr. McDonald's Dell Desktop Computer. Many of these images are irrelevant to the offense charged in that they are completely unrelated to the images Mr. McDonald is charged with transporting.  Furthermore, due to the number of people who had access to this Desktop in Mr. McDonald's home, the government cannot lay a sufficient foundation that Mr. McDonald was in knowing possession of these images.  The prejudicial effect if the Court were to consider the images from the Desktop in adjudicating this case outweighs any alleged probative value they may have under Fed. R. Evid. 403.

(m)  Even if the government is able to establish that Mr. McDonald was aware of the presence of the image files containing child pornography on the Desktop computer (which was located in a household of numerous children, adults, and visitors), they are images that were possessed in a foreign country, not in the United States.  In testimony during another proceeding in this case, a member of the team investigating Mr. McDonald acknowledged that possession of child pornography in a foreign country "was not part of their investigation."  Doc. # 69, Transcript of Hearing, July 27, 2017, at 182 L. 10-12.  There is no evidence that the images on the Desktop computer are ones that Mr. McDonald created or transported.  Since the presence in the United States of any contraband on the desktop computer was made possible solely by an extra-territorial governmental seizure, Mr. McDonald cannot be prosecuted for them.  *See e.g. United States v. Cafiero,* 211 F.Supp.2d 328, 333 (D. Mass. 2002) (A Defendant brought into the United States due to an unscheduled landing of an international flight from Mexico to Italy could not be prosecuted for possession with intent to distribute

13

    narcotics in the United States); *see also United States v. Martinelli,* 62 M.J. 52 (A. Ct. Crim. App., 2005) (Accused's guilty pleas to possessing child pornography in violation of the Child Pornography Prevention Act were improvident where underlying conduct occurred in Germany); *but see United States v. McVicker,* 979 F.Supp.2d 1154, 1172 (D. Or. 2013) (The *creation* of child pornography outside the United States that is intended to be or may be expected to be transported in interstate or foreign commerce may be prosecuted under Child Pornography Prevention Act even if acts were not committed in the United States). Since Mr. McDonald may not be prosecuted for images *possessed* solely in a foreign country, they are not relevant to the charge that he may have transported *other* child pornography images via internet. Furthermore, under Fed. R. Evid. 403, the prejudice of these materials to the Court's adjudicative process in this case outweighs the limited probative value they provide.

(n) The image files came from Mr. McDonald's desktop which was seized from his home in the Philippines without a warrant. The desktop seizure was the subject of pretrial motions as fully briefed in Mr. McDonald's Post Hearing Brief (Doc. # 74) and Objection to the Report and Recommendations of the Magistrate Judge (Doc. # 87). The Motions and Objections are renewed and provide additional basis for the Court to exclude the images from consideration when deciding if the United States has met its burden of proof beyond a reasonable doubt because they are "fruits" of the unlawful seizure of his desktop as stated in his pretrial Motions.

12. <u>Continuing Objections Based on Motions to Suppress Evidence & Statements and to Dismiss Indictment:</u>

Normally the denial of a pretrial motion preserves the objection for appeal and defense counsel need not renew the objection at trial. *United States v. Johnson,* 906 F.2d 1285, 1290 (8th Cir. 1990). However, if counsel is asked during trial if there are objections to evidence and responds "no objection," the Motion is waived. *United States v. Comstock,* 531 F.3d 667, 675 (8th Cir. 2008). In an abundance of caution counsel renews Mr. McDonald's Motion to Dismiss the Indictment (Doc. # 46), Objection to the seizure of his desk top computer in the Philippines and any evidence thereon be suppressed as stated in his Post Hearing Brief (Doc. # 74), Objection to the Report and Recommendations of the Magistrate Judge (Doc. # 87) and Motions to Suppress Evidence and Statements (Docs. # 47, # 56, #62, #74, #103 & # 111). Counsel also requests that these motions and objections be acknowledged by the Court as continuing throughout the trial of this case and that Mr. McDonald does not intend to waive them.

13. <u>Definition of Legal Terms:</u>

Mr. McDonald moves in limine that the government's witnesses should not be permitted to opine, render conclusions, or testify regarding definitions of terms such as "lascivious" or "child pornography." In the grand jury testimony of a law enforcement officer, that officer was asked to define the term "lascivious." Similarly, in reports, an officer has referred to certain images as "child pornography." These are terms have specific legal meanings that the Court must apply in this case. Conclusory reference to material by a government witness as being "lascivious" or "child pornography" is prejudicial and invades the province of the fact finder.

Additionally, Mr. McDonald renews his Motion to Dismiss (Doc. # 46) based on the use of the term "lascivious" in the Indictment and as a basis for conviction in this case, because it is unconstitutionally vague in light of recent Supreme Court precedent. It is unconstitutionally vague by

15

the explicit wording of *United States v. Williams*, 553 U.S. 285 (2008), and by the reasoning of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

BY REASON OF THE FOREGOING, Defendant moves this Court for its order in limine as to above-listed matters and asking that the Court direct the Government not adduce evidence of the those listed matters.

Respectfully submitted,

/s/*Robert C. Wolfrum*
ROBERT C. WOLFRUM
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Robert_Wolfrum@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Rob Livergood, Assistant United States Attorney.

/s/*Robert C. Wolfrum*
ROBERT C. WOLFRUM
Assistant Federal Public Defender